## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Case No. 13bk47450 |
|  | ) | Chapter 13 |
| Victor J. Fini, | ) |  |
|  | ) | Honorable Bruce W. Black |
| Debtor. | ) |  |
|  | ) |  |

## MEMORANDUM DECISION

This matter is before the court for decision on the Motion to Modify Confirmed Plan filed by the debtor, Victor J. Fini (the "Debtor"), and the response filed by BMO Harris Bank N.A. ("BMO"). BMO holds a second mortgage on the Debtor's residence. Under the Debtor's proposed modified Chapter 13 plan, BMO's secured claim would be valued and paid based on the value of the Debtor's residence according to an appraisal obtained by BMO. The Debtor argues that the proposed treatment of BMO's claim under the plan is proper, notwithstanding the general prohibition on modification of residential mortgage claims in section 1322(b)(2) of the Bankruptcy Code,[1] because the terms of the mortgage except BMO's claim from the general prohibition. BMO disagrees and contends that its claim is protected from modification under section 1322(b)(2). For the reasons stated below, the Debtor's motion will be granted.

## I.    Background

On December 11, 2013, the Debtor filed a petition for bankruptcy relief under Chapter 13 of the Bankruptcy Code. The Debtor owns and resides at the property located in Bolingbrook, Illinois (the "Property"). The Property is the Debtor's principal residence, his largest asset, and his primary source of liability. Of the Debtor's total scheduled liabilities of $403,061.89, liabilities secured by first and second mortgages on the Property total an estimated $357,000.

---

[1]   11 U.S.C. § 101 *ff.* Any reference to "section" or "the Code" is a reference to the Bankruptcy Code unless another reference is stated.

Case 13-47450   Doc 57   Filed 02/06/15   Entered 02/09/15 16:24:41   Desc Main
Document      Page 2 of 9

The Debtor's schedules listed the value of the Property at $186,500, subject to a first mortgage in the amount of $215,000 and BMO's second mortgage in the amount of $142,000.[2] By the Debtor's estimation, then, BMO's claim was completely unsecured.

On January 31, 2014, the Debtor's amended chapter 13 plan was confirmed. Section E, paragraph 3.2 of the confirmed plan provided that BMO's claim would be "stripped off"— meaning that it would be treated as completely unsecured under the plan—and paid as a general unsecured claim under Section E, paragraph 8 of the plan. Under that plan, the Debtor's general unsecured creditors would receive approximately 2% of the value of their allowed claims.

On March 27, 2014, BMO filed a motion to vacate the confirmation order arguing lack of proper notice of the Debtor's intent to strip off BMO's junior mortgage, challenging the Debtor's valuation of the Property, and requesting leave to object to the Debtor's plan. On April 4, 2014, the court granted BMO's motion to vacate the confirmation order only as to Section G, paragraph 2 of the plan, concerning the treatment of BMO's claim under the plan.

On May 14, 2014, the Debtor filed a motion to value BMO's claim based on the Debtor's schedules, where the Property's value was assessed at $186,500, subject to a first mortgage in the amount of $215,000. In response, BMO presented an appraisal valuing the Property at $220,000. Thus, according to BMO's appraisal, $5,000 of its second mortgage was secured.

The Debtor has not challenged BMO's valuation of the Property. Instead, on August 29, 2014, the Debtor filed this Motion to Modify Confirmed Plan (the "Debtor's Motion") and submitted an amended confirmed plan using the value stated in BMO's appraisal of the Property.

The Debtor's proposed modification of the confirmed plan treats BMO's claim as partially secured, to the extent of $5,000, and proposes to pay the $5,000 secured amount in full, plus interest, under Section E, paragraph 3.1(b) of the plan. The remaining undersecured portion of BMO's claim, an amount in excess of a $135,000, would be treated as a general unsecured claim under Section E, paragraph 8 of the plan. Based on the Debtor's available monthly income, general unsecured creditors are entitled to receive approximately 1% of the value of their allowed claims. This treatment would clearly be a modification of BMO's rights and it

---

[2]   BMO has filed a claim for a total amount of $150,737.08.

would allow the Debtor to keep his home simply by making his plan payments and staying current on the unmodified first mortgage

BMO filed its Response in Opposition to the Debtor's Motion to Modify Confirmed Plan ("BMO's Response"), challenging the Debtor's proposed modification of BMO's secured claim as barred by section 1322(b)(2), and the Debtor replied in support of his motion ("Debtor's Reply").

## II.    Discussion

The sole issue in this proceeding is whether BMO is a creditor whose claim is secured only by a security interest in real property that is the Debtor's principal residence, within the meaning of section 1322(b)(2). The Debtor argues that modification of BMO's claim is proper under section 1322(b)(2) because the mortgage instrument, in addition to creating a lien on the residence, also created a lien on personal property.

### A. Section 1322(b)(2) Protection from Modification

Under section 1322(b)(2), a chapter 13 plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence . . . ." 11 U.S.C. § 1322(b)(2). Thus, although bifurcation of an undersecured claim into its secured and unsecured components based on the present value of the collateral is generally authorized by 11 U.S.C. § 506(a),[3] "[s]ection 1322(b)(2) prohibits such a modification where . . . the lender's claim is secured only by a lien on the debtor's principal residence." *Nobelman v. American Sav. Bank*, 508 U.S. 324, 332 (1993). This exception to the general rule regarding valuation of secured claims pursuant to section 506(a) is "explained by the legislative history indicating that favorable treatment of residential mortgagees was intended to encourage the flow of capital into the home lending market." *Id.* (Stevens, J., concurring).

The Debtor's original plan could have successfully stripped-off BMO's second mortgage if the Debtor could have proved that the value of the home was less than $215,000, the amount of the first mortgage. *See In re Hall*, 495 B.R. 393, 395-96 (Bankr. N.D. Ill. 2013) (noting the

---

[3]    Section 506 provides that "[a]n allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim." 11 U.S.C § 506(a)(1).

majority view). *See also* 8 *Collier on Bankruptcy*, ¶ 1322.06[1][a][i] at 1322-25 to 1325-26
(Allan N. Resnick & Henry J. Sommer eds., 16th ed. 2013). But as the court held in *Nobelman*, if
the value of the property exceeds the amount of the first mortgage in any amount, an attempt to
entirely strip-off the second mortgage will fail. With the currently proposed amended plan, the
Debtor has given up his attempt at strip-off, and instead seeks to use section 506(a) to cram down
the second mortgage, as stated above. He may only do so if the antimodification provision in §
1322(b)(2) does not apply.

Courts have generally interpreted the section 1322(b)(2) exception to modification
narrowly, such that claims secured by any property in addition to the debtor's home are not
protected from modification. *See Reeves*, 65 B.R. at 900 (citing cases). This rationale remained
unaffected by the Supreme Court's 1993 ruling in *Nobelman* and stems from the text of section
1322(b)(2) itself. *See In re Hammond*, 27 F.3d 52, 56–57 (3d Cir. 1994) (discussing *Nobelman*);
*see also In re Jackson*, 13-20523, 2013 WL 6408039, at *2 (Bankr. N.D. Ill. Nov. 20, 2013); *In
re Larios*, 259 B.R. 675, 678 (Bankr. N.D. Ill. 2001).

Thus, section 1322(b)(2)'s limitation on modification "does not apply when the creditor
has an additional security interest in collateral other than the real property in which the debtor
resides because section 1322(b)(2)'s express terms cover claims secured only by a security
interest in the debtor's principal residence." *Hammond*, 27 F.3d at 55–56. Therefore, "a
mortgage which creates security interests in a debtor's personal property in addition to a lien on
the mortgagor's principal residence takes the mortgage beyond the protection of the
antimodification clause . . . and permits bifurcation of the mortgage into secured and unsecured
components under section 506(a)." *Id.* at 58; *see also Jackson*, 2013 WL 6408039, at *2 (Bankr.
N.D. Ill. Nov. 20, 2013) (modification is proper where the lender has also taken a security
interest in the debtor's depository accounts); *Larios*, 259 B.R. at 678 (modification is proper
where the mortgage lender's claim was also secured by a security interest in personal property of
the debtors' corporation).

Accordingly, whether BMO's rights may be modified by the Debtor's chapter 13 plan
depends on the nature and extent of the security interest that BMO holds. *See Reeves*, 65 B.R. at
900. In determining whether the security interest extends to personal property beyond the

security interest in real property, "[t]he determinative factor is the language used in the underlying loan documents." *Larios*, 259 B.R. at 678.

1.  The Mortgage Instrument

The interest held by BMO under the mortgage instrument (the "<u>Mortgage</u>") includes (1) the grant of a mortgage in identified "Real Property" (described as including fixtures), (2) an assignment of leases and rents, and a (3) Uniform Commercial Code ("<u>UCC</u>") security interest in "Personal Property" and "Rents" as follows:

> GRANT OF MORTGAGE. For valuable consideration, Grantor mortgages, warrants, and conveys to Lender all of the Grantor's right, title, and interest in and to the following described real property, *together with all existing or subsequently erected or affixed buildings, improvements and fixtures*; all easements, rights of way, and appurtenances; all water, water rights, watercourses and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitations all minerals, oil, gas, geothermal and similar matters, (the "Real Property") . . . commonly known as 1438 W BRIARCLIFF, Bolingbrook, IL 60440.
>
> . . . .
>
> Grantor presently assigns to Lender all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. *In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.*

Mortgage, at 1 (emphasis added).  The relevant terms are defined as follows:

> Personal Property. The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.
>
> Property. The word "Property" means collectively the Real Property and the Personal Property.
>
> Real Property. The words "Real Property" mean the real property, interests and rights, as further described in this Mortgage.
>
> . . . .
>
> Rents. The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits and other benefits derived from the Property.

*Id.* at 11–12. Additionally, the Mortgage terms incorporate the following Security Agreement as applicable to the extent that the Property (defined to include Real Property and Personal Property) constitutes fixtures, granting the lender the rights of a secured party under the UCC, including the right to repossess "Personal Property not affixed to the Property," as seen below:

> SECURITY AGREEMENT; FINANCING STATEMENTS. The following provisions relating to this Mortgage as a security agreement are a part of this Mortgage:
> Security Agreement. This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.
>
> Security Interest. Upon request by Lender, Grantor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. In additional to recording this Mortgage in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Mortgage as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property. Upon default, Grantor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

Mortgage at p. 6.

BMO argues that this language comes within a line of cases that hold that language in a mortgage instrument encompassing interests that are incidental to an interest in the mortgaged real estate, such as fixtures, will not make a lender's claim one not "secured only by an interest in real estate that is the debtor's principal residence" for purposes of § 1322(b)(2) modification. *See e.g., In re Davis*, 989 F.2nd 208 (6th Cir. 1993); *In re Duran*, 271 B.R. 888 (Bankr. D. Wyo. 2001); *In re Jackson*, 136 B.R. 797 (Bankr. N.D. Ill. 1992).

The Debtor argues that this language goes beyond the language in these cases and extends the lien to personal property which cannot be characterized as incidental to the real estate. Specifically, the Debtor argues that the above language covers a stove, washer, dryer, air compressor, and gas grill which are "attached" to the real estate but do not amount to "fixtures" under Illinois law. Debtor's Reply at p. 4.

The court concludes that if the language were limited to the real estate and fixtures as defined by Illinois real estate law, BMO would be protected by § 1322(b)(2). But the language extends further. Under Illinois law, fixtures are "goods that have become so related to particular real property that an interest in them arises under real property law." 810 ILCS 5/9-102(a)(41). In determining whether an item is a fixture, Illinois courts consider three factors: "(1) the actual annexation of that item to the realty; (2) the application of the item to the use or purpose for which the land is appropriated; and (3) the intention to make the item a permanent accession to realty." *Leon v. Washington Mut. Bank, F.A.*, 164 F. Supp. 2d 1034, 1038 (N.D. Ill. 2001). Among these, "intent is the preeminent factor and the other two are primarily evidence of intent." *Id.*

In this case, the Mortgage purports to grant an interest in the Real Property, described in pertinent part as "real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures . . . ." Additionally, the Mortgage grants a UCC security interest in Personal Property and Rents, specifying that the Mortgage will constitute a security agreement to the extent that the Property—defined to include Real Property and Personal Property—constitutes fixtures. However, assuming that the UCC security interest is limited to fixtures, "it does not necessarily follow that fixtures are real property." *In re Reeves*, 65 B.R. 898, 901 (N.D. Ill. 1986).

2.  BMO's Claim is Secured by Collateral Other Than Real Property That is the Debtor's Principal Residence

While an interest in fixtures may arise under real property law—and the grant of the mortgage in this case encompasses incidental real property interests including fixtures—"fixtures retain a separate status as personal property." *Reeves*, 65 B.R. at 901. A security interest under the UCC "may be created in goods that are fixtures or may continue in goods that become fixtures." 810 ILCS 5/9-334(a). In some circumstances, a UCC security interest in fixtures may prevail over a conflicting security interest in fixtures arising under real property law. *See* 810 ILCS 5/9-334(c)–(f). In those circumstances, goods attached to real property can be repossessed and disposed of under the UCC, *See* 810 ILCS 5/9-604, as recognized by the terms of the Mortgage. *See* Mortgage, at 6 ("Upon default, Grantor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Grantor and Lender

and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.").

The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005[4] ("BAPCPA") included a definition of the term "debtor's principal residence" to mean, in relevant part:

> [A] residential structure if used as the principal residence by the debtor, including incidental property, without regard to whether that structure is attached to real property . . . .

11 U.S.C. § 101(13A). The term "incidental property" was also added and defined to mean:

> [P]roperty commonly conveyed with a principal residence in the area where the real property is located; all easements, rights, appurtenances, fixtures, rents, royalties, mineral rights, oil or gas rights or profits, water rights, escrow funds, or insurance proceeds; and all replacements or additions.

11 U.S.C. § 101(27B). Thus, an interest in fixtures that arises under real property law is part of an interest in real property that is the debtor's home, for our purposes.

In *Reeves*, the court noted that a UCC security interest in fixtures is distinguishable from an interest in fixtures that arises solely under real property law. There, the District Court held that a retail installment contract that included the grant of a mortgage and a UCC security interest in goods classified as fixtures fell outside the section 1322(b)(2) exception to modification. *Reeves*, 65 B.R. at 900–02. The retail installment contract in *Reeves* granted a security interest in the real estate "together with all improvements, tenements, easements, fixtures and appurtenances . . ." and provided also for a UCC security interest "in the above-described goods and all accessories, parts and other property now or hereafter at any time owned by buyer and installed therein or affixed thereto and all proceeds thereof . . . ." *Id.* at 900–901. Thus, the court concluded, the instrument was one --

> [C]reating two different security interests: one attaching only to fixtures under Article 9, and the other attaching to "real property that is the debtor's principal residence," including fixtures, under the trust deed mortgage and real estate law. While the latter security interest falls within the §1322(b)(2) exception, the former does not. By creating both, [the lender] loses the benefit of the §1322(b)(2) exception.

The Mortgage in this case purports to grant a UCC security interest in "Personal Property" defined to mean "all equipment, fixtures, and other articles of personal property now

---

[4]   Pub. L. No. 109–8, § 306, 119 Stat 23, 80–81.

or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property."
Even assuming that the terms limit this interest to "fixtures" under the UCC, this interest is
distinguishable from an incidental interest arising solely by virtue of an interest in real property
that is the Debtor's principal residence.

The Mortgage granted BMO both an incidental interest in fixtures and an interest in
goods that may be removed and repossessed under the UCC.  As such, BMO's security interest
in "Personal Property," even if limited to fixtures under the UCC, in addition to the interest in
"Real Property" including fixtures, extends beyond "a security interest in real property that is the
Debtor's principal residence" for purposes of section 1322(b)(2) protection from modification.
Therefore, BMO's claim may be modified under the Debtor's plan.

### III.    Conclusion

For the foregoing reasons, the court finds that BMO's claim in the scheduled amount of
$142,000 and secured by a $5,000 interest in the value of the Debtor's home may be modified
pursuant to section 1322(b)(2) under the Debtor's chapter 13 plan.  The Debtor's Motion to
Modify Confirmed Plan is granted.  A separate order will issue.

DATED: February 6, 2015

Bruce W. Black
United States Bankruptcy Judge